# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

**BRAD E. PROCTOR,**

    **Plaintiff,**

v.                                             Civil Action No. 2:19-cv-00432
                                                Honorable Thomas E. Johnston

**ROANE COUNTY COMMISSION,**
**M.P. KING, N.S. STEPP, S.A. McDONALD,**
**Z.W. HARTLEY,**

    **Defendants.**

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERT WITNESS, GERRY D. BILLY

**NOW COME** Defendants, Roane County Commission, M.P. King, N.S. Stepp, S.A. McDonald, and Z.W. Hartley, by and through counsel, Wendy E. Greve, Drannon L. Adkins, and the law firm of Pullin, Fowler, Flanagan, Brown & Poe, PLLC, pursuant to Rule 702 of the Federal Rules of Evidence, respectfully move this Honorable Court <u>in limine</u> for an Order Excluding Plaintiff's Expert, Gerry D. Billy, state and aver as follows:

### I.    INTRODUCTION

A.  <u>Background</u>

Plaintiff, Brad Proctor, filed this lawsuit against Defendants, Roane County Commission, Deputy M.P. King, and West Virginia State Police Troopers, N.S. Stepp, S.A. McDonald, and Z.W. Hartley, alleging the following federal causes of action: excessive force, municipal liability, bystander liability. <u>ECF No. 1</u>.

On March 6, 2020, this Court dismissed Plaintiff's municipal liability claim against the Roane County Commission, while denying the Individual Defendants' motion as to

1

the excessive force and bystander liability claims. ECF No. 25. On August 31, 2020, Plaintiff sought leave to file an amended complaint, which requested leave to re-assert his municipal liability claim against the Roane County Commission, as well as to assert state-law claims of negligent retention and negligent supervision and training. ECF No. 39. By Order entered on September 21, 2020, the Court granted Plaintiff's Motion. ECF No. 53.

B. Plaintiff's Expert Witness – Mr. Gerry Billy

Plaintiff has disclosed Mr. Gerry Billy ("Mr. Billy") as an expert witness in this matter. See Plaintiffs' Rule 26(a)(2) Disclosure, attached hereto as **Exhibit 1**. Plaintiff stated that Mr. Billy is "[e]xpected to testify and render opinions regarding defendants' use of force and Roane County Commission's negligence and deliberate indifference." Id. Thus, Mr. Billy purports to be an expert in police practices and procedures. Id.

Mr. Billy is a former Sheriff and former Jail Administrator. See, Curriculum Vitae of Sheriff Gerry D. Billy (retired), attached hereto as **Exhibit 2.** He is an adjunct professor at several at two community colleges. Id. at p. 3-4. He served as Sheriff in Licking County, Ohio for approximately 24 hears. Id. at p. 4.

C. Mr. Billy's Purported Opinions

Mr. Billy authored two reports—a September 14, 2020 "Preliminary Report" and a December 2, 2020 "Supplemental Letter of Professional Opinion…" See, Expert Reports of Gerry D. Billy, MCJ, attached hereto as **Exhibit 3 and 4.**[1]

In his Preliminary Report, Mr. Billy notes that he was asked:

> to render [his] professional opinion as to the on-site performances, actions and responses of the named law enforcement officials

---

[1] Mr. Billy's Supplemental Letter of Professional Opinion" was disclosed over two weeks after the close of discovery.

> during the vehicle pursuit of Brad Proctor on January 10, 2018 and his subsequent arrest at his home in Clay County, West Virginia eight days later.

**Exhibit 3**, at p. 2. Mr. Billy then goes on to summarize the evidence in this matter, beginning with Plaintiff's successful attempt to flee from officers and culminating with the incident that forms the basis of Plaintiff's Complaint. Id. at p. 4-5.

With this background, Mr. Billy offers his analysis about the actions that occurred at Plaintiff's residence on January 18, 2018. He opines that this case is not excessive force, but rather, a "calculated hit job by the four police officers, led by none other than Deputy Michael King." Id. at p. 6. He further notes that:

> What happened on the evening of January 18, 2018 was not a coordinated arrest plan involving multiple officers to capture a known violent offender. No. This was revenge plotted by Michael King because in part, he was embarrassed that he wrecked his cruiser during his pursuit of Brad Proctor eight days earlier.

Id. He also states that he

> believe[s] that another reason for King's viciousness is simply, this is who is has proven to be in numerous citizen complaints against him. The beating exacted by King and his accomplices; Stepp, McDonald, and Hartley was akin to a shark feeding frenzy. It was bloodlust.

Id. Mr. Billy then goes on to highlight the differences in the testimony of Plaintiff and the officers, noting that they "could not be farther apart. Id. at p. 7. Because of the discrepancy, he claims that "[s]imply put, either one or all of the officers are lying about their participation in this attack." Id. at p. 8.

Mr. Billy takes issue with the decision to utilize the U.S. Marshall Services "CUFF" Task Force because "Brad Proctor has never been accused of a violent felony[.]" According to Mr. Billy's opinion, Plaintiff "is a thief, and not a particularly good

one." Mr. Billy states that the alleged "beating Brad Proctor sustained was both unethical and illegal." Id.

Ultimately, Mr. Billy offers the six opinions as to how the "Defendants were negligent[:]"

1. The failure of the Defendants M.P. King, N.S. Stepp, S.A. McDonald and Z.W. Hartley to exercise restraint in the arrest of Brad Proctor and their use of excessive, wanton and brutal force against Brad Proctor was clearly unreasonable and therefore negligent;

2. The Defendants Roane County Commission has engaged in a pattern, practice or custom of failing to adequately investigate and take corrective actions for the conduct of their employees shows a deliberate indifference to a serious need and therefore negligent;

3. The Defendant Roane County Commission, by their acts and omission has exhibited deliberate indifference to the unreasonable risk of unlawful deprivation of citizens' constitution [*sic*] rights, which its customs and policies are capricious, dated, and consequently negligent;

4. The actions and/or omissions of Defendants M.P. King, N.S. Stepp, S.A. McDonald and Z.W. Hartley violated their duty to uphold the law and protect the public from illegal actions, showing a callous disregard for the wellbeing of citizens is clearly deliberate indifference and negligent;

5. The Defendant Roane County Commission's failure to act with regard to their knowledge of Defendant King's past failure to follow established law enforcement procedures and protocols relating to excessive force against third parties, as well as their negligent retention of Deputy King is deliberately indifferent and as such, negligent;

6. The Defendant Roane County has failed to supervise, discipline and/or train Defendant King after becoming aware of continued unlawful conduct is unreasonable and therefore negligent.

Id. at p. 9.

On December 2, 2020, Mr. Billy provided a "Supplemental Letter of Professional Opinion." **Exhibit 4**. This supplement deals primarily with Plaintiff's claims against the

4

Roane County Commission. Id. Mr. Billy notes that his supplement does not change is opinions concerning the actions of the officers. Id. at p. 2.

Mr. Billy opines that the Roane County Commission should have conducted an internal investigation every time there is a use of force of citizen complaint as it is in the policy. Id. He takes issue with the Roane County Sheriff relying upon outside agencies to conduct investigations into what he classifies as "serious complaints." Id. He also takes issue with the Roane County Commission's alleged failure to ensure that Deputy King was following the body camera policy. Id. Ultimately, he opines that the Roane County has repeatedly displayed deliberate indifference to his misconduct." Id. at p. 3.

## II.  LEGAL STANDARD

The admissibility of expert testimony is governed by Fed. R. Evid. 702. Under Rule 702, an expert witness must be qualified by "knowledge, skill, experience, training, or education." If that threshold is satisfied, the expert may offer testimony in the form of an opinion, but only if all of the following are true:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id. Thus, expert testimony is admissible if the expert is qualified and if his or her expert testimony is reliable and relevant. Id.; *see also* Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).

The Fourth Circuit Court of Appeals has provided the following guidance regarding the admission of expert testimony:

> Ultimately, an expert's testimony is admissible under Rule 702 if it rests on a reliable foundation and is relevant. The district court's role in considering the admissibility of expert testimony is that of a gate-keeper, whose prime task is to assess the reliability and relevancy of the proffered evidence….
>
> As the gate-keeper, the district court must remember that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading.

Higginbotham v. KCS Int'l, Inc., 85 Fed.Appx. 911, 914 (4th Cir. 2004) (internal citations and quotation marks omitted).

The proponent of the testimony bears the burden of proving the expert's qualifications and the reliability of the opinions by a preponderance of the evidence. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 n.10 (1993) (*citing* Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)); Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

### III.  ARGUMENTS

**A. Expert Testimony is Not Warranted in this Matter as Such Testimony Will Not Assist the Trier of Fact**

As noted above, under Rule 702 of the Federal Rules of Evidence, an expert witness must be qualified by "knowledge, skill, experience, training, or education." If that threshold is satisfied, the expert may offer testimony in the form of an opinion, but only if all of the following are true:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

6

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 reflects the Supreme Court's decision in Daubert, 509 U.S. 579, and its subsequent decision in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). Under Daubert, "the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592; *see also* Kumho, 526 U.S. at 147 (extending Daubert's application to "all expert testimony").

Courts have repeatedly noted that the admissibility of expert testimony turns on the particular facts and circumstances of the case:

> As a general proposition, an "objective reasonableness" standard may be comprehensible to a lay juror and require no expert assistance. Kopf v. Skyrm, 993 F.2d 374, 378 (4th Cir. 1993). However, in an excessive force case, the relevant standard of conduct used to assess reasonableness "is not defined by the generic-a reasonable person-but rather by the specific-a reasonable officer." Id. As a result, the reasonableness inquiry in an excessive force case can involve "specialized knowledge," which an expert witness can assist the jury in understanding. Id.; *see also* Fed.R.Evid. 702. Indeed, in Kopf, we held that a district court had abused its discretion in excluding expert testimony "as to the prevailing standard of conduct for the use" of two "specialized tool[s]" of police work: police dogs (the training and use of which were held to be "obscure skills") and slapjacks. Id. at 379….
>
> However, Kopf did not establish a "blanket rule that expert testimony is generally admissible in excessive force cases." Kopf, 993 F.2d at 378. Rather, we there specifically noted that "the facts of every case will determine whether expert testimony would assist the jury." Id. at 379. Here the proffered experts did not offer expert testimony providing specialized knowledge on "obscure skills." Their only relevant testimony involved opinions, given their

7

> particular interpretations of the contested facts, as to the reasonableness of Corbeau's use of force at issue in this case (i.e. his shooting of Clem). Instead of assisting the jury, such expert opinion risked "supplant[ing] a jury's independent exercise of common sense" and its role of determining the facts. Id. at 377. Thus, the district court did not abuse its discretion in excluding this testimony.

Clem v. Corbeau, 98 Fed.App'x. 197, 201-202 (4th Cir. 2004). Clem was an excessive force case involving use by a police officer of a firearm to subdue a mentally ill defendant, who was charging the officer in a narrow hallway, by shooting but not killing him. Id. at 199-200. Relying upon the Kopf decision, which held that the trial court should have admitted an expert's specialized knowledge of an "obscure skill" consisting of the use of police dogs and a slapjack, the Clem court affirmed exclusion of the proffered expert testimony for the reason that the experts did not offer expert testimony providing specialized knowledge on the "obscure skill" in that case, which was the use of the gun. Id. at 201-202. The court found that the expert opinion offered would not have assisted the jury because "[t]heir only relevant testimony involved opinions, given their particular interpretations of the contested facts, as to the reasonableness of Corbeau's use of force at issue in this case." Id. at 201. It added that the admission of that testimony would have risked supplanting the jury's role of determining the facts. Id.

As in Clem, this case does not involve "obscure skills," such as the use of a canine or other implement. This case involves the use of force in effectuating the arrest of Plaintiff who had successfully eluded officers the week prior. Mr. Billy's proposed testimony will not assist the factfinder in determining whether the use of force was reasonable. Rather, Mr. Billy's testimony is the same as that in Clem, which "involved opinions, given their particular interpretations of the contested facts, as to the

8

reasonableness of [the officer's] use of force at issue in this case[,]" and which the Fourth Circuit found was properly excluded. Id. at 201. As in Clem, Mr. Billy's proposed testimony "risk[s] supplanting a jury's independent exercise of common sense" and its role of determining the facts. Id. (cleaned up).

Accordingly, because Mr. Billy's proposed testimony will not assist the trier of fact on any relevant issue, the Court should exclude Mr. Billy from testifying during the trial of this matter.

### B. Mr. Billy Cannot Offer Legal Opinion Testimony

Mr. Billy's "opinions" amount to nothing more than legal arguments as to the correct interpretation of the applicable law, much of which has been repeated by Plaintiff in his pleadings.

"[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006) (determining whether the opinion testimony of a physician-expert constituted an impermissible legal conclusions); *see also*, United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002) ("Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination."). Generally, the Fourth Circuit identifies "improper legal conclusions by determining whether 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" McIver, 470 F.3d at 562; Barile, 286 F.3d at 760.

Expert opinions concluding an officer's conduct was "not justified," "not warranted," and "totally improper" expresses legal conclusions and "conclusory condemnations" of the officer's conduct, and merely instructs the jury as to the result it

should reach. Hygh v. Jacobs, 961 F.2d 359, 364 (2nd Cir. 1992). Legal conclusions are for the Court to make and are not proper subject for expert testimony. Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (abuse of discretion to allow police-practices expert to testify that officers' conduct comported with Fourth Amendment). Thus, a witness typically may not "give purely legal conclusions," such as that an officer lacked probable cause to arrest, Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983), or that a search conducted without a warrant violated the Fourth Amendment, Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988), as such conclusory testimony would "tell the jury what result to reach" on ultimate issues only the jury should resolve, Owen, 698 F.2d at 240.

Reasonableness under the Fourth Amendment is a legal conclusion, making it an improper subject of expert witness testimony. United States v. Williams, 343 F.3d 423, 435 (5th Cir. 2003); see also, Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (finding that district court abused its discretion in allowing expert to testify as to legal conclusions as to reasonableness of officers' actions). Numerous courts have found that an expert should not be permitted to opine about whether a law enforcement officer used reasonable force or had probable cause, particularly where credibility determinations must be made. See Quagliarello v. Dewees, 802 F.Supp.2d 620, 625 (E.D.Pa. 2011) (excluding expert opinions as to ultimate legal conclusions, including whether the defendant officer used "unreasonable" force, and whether the officer's treatment of the plaintiff was "unlawful"); Stern v. Shammas, 2015 U.S. Dist. LEXIS 97879 at *8-10 (E.D.N.Y. 2015) (holding that police procedures and use of force expert could not offer legal conclusions that arrest was not justified or force used was

10

unreasonable, could not make credibility determinations, and could not offer opinions regarding defendant's motives, intent, or state of mind).

While it is true that the Rules of Evidence do not make expert opinions on ultimate issues objectionable, Mr. Billy's opinions go well beyond ultimate issue opinions to the realm of legal conclusions. That is, Mr. Billy's report is simply a collection of legal conclusions couched as opinions.

In short, Mr. Billy's "opinions" are more akin to a legal brief filed by counsel than a report by an expert. Such arguments of law by an expert witness would not be admissible at trial.

### C. Mr. Billy's Opinions Improperly Invade the Province of the Jury

Credibility determinations and weighing of the evidence are the exclusive function of the jury and are not permitted as expert testimony. See United States v. Dorsey, 45 F.3d 809, 815 (4th Cir. 1995); *see also* United States v. Burgos, 94 F.3d 849 (4th Cir. 1996) (stating "determinations of credibility are within the sole province of the jury") (*quoting* United States v. Lowe, 65 F.3d 1137, 1142 (4th Cir. 1995)); Jacobs v. College of William and Mary, 517 F.Supp. 791, 794 (E.D.Va 1980) ("Issues of fact should be left to the determination of the jury, whose duty it is to determine the credibility of the witnesses [...]"); Dorsey v. Chapman, 262 F.3d 1181, 1186 (11th Cir. 2001) (recognizing "expert testimony bolstering the credibility of a witness is improper"); United States v. Rodriguez-Flores, 907 F.3d 1309, 1322 (10th Cir. 2018) (expert testimony regarding veracity "is improper because it (1) usurps a critical function of the jury; (2) is not helpful to the jury, which can make its own determination of credibility;

and (3) when provided by impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury." (citation omitted));

Similarly, Mr. Billy's opinion in this case as to the version of the facts he deems most credible in this case is improper and should be excluded. Mr. Billy's "opinion" testimony does not comport with established legal principles and is nothing more than 20/20 hindsight. Mr. Billy cannot make his own convenient credibility determination and simply tell the jurors what their interpretation of evidence should be. Lee v. Andersen, 616 F.3d 803, 808-809 (8th Cir. 2010).

Mr. Billy explicitly makes credibility determination into which version of events he believes. **Exhibit 3**. And ultimately, Mr. Billy concludes that "[s]imply put, either one or all of the officers are lying about their participation in this attack." Id. at p. 8. Thus, underlying all of Mr. Billy's opinions are his credibility determinations of the witnesses; that only Plaintiff is telling the truth, and the statements of every witness to the contrary are not to be believed. Id. "[I]n the absence of unusual circumstances, Rule 702 renders inadmissible expert testimony on issues of witness credibility." United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013). Thus, expert testimony is properly excluded "if it is introduced merely to cast doubt on the credibility of other eyewitnesses, since the evaluation of a witness's credibility is a determination usually within the jury's exclusive purview." " United States v. Dorsey, 45 F.3d 809, 815 (4th Cir. 1995).

Mr. Billy makes credibility determinations and renders opinions in the present case based upon those determinations. Mr. Billy's opinions are improper and should be excluded.

**D. Mr. Billy Cannot Opine as to the Mindset of the Defendants**

At various times in his report, Mr. Billy offers "opinions" concerning the state of mind of the officers. For example, Mr. Billy stylizes what occurred as a "calculated hit job" against Plaintiff. **Exhibit 3**, at p. 6. He further opines that the execution of the arrest warrant "was revenge plotted by Michael King because in part, he was embarrassed that he wrecked his cruiser during his pursuit of Brad Proctor eight days earlier." Id. He then compares what he believes occurred to a "shark feed frenzy" and "bloodlust." Id. These "opinions" are wholly improper and will not assist the factfinder. Rather, they are calculated solely to inflame and prejudice the jury.

Whatever the intent of the officers was at the time is wholly irrelevant to Plaintiff's excessive force or bystander liability claim. In the context of excessive force claims, the only relevant inquiry is whether the force applied was "objectively reasonable in light of the facts and circumstances confronting [the officer]" at the time. Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (*quoting* Graham v. Connor, 490 U.S. 386, 397 (1989)). "The officer's actions do not amount to excessive force if they are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." . (alterations and internal quotation marks omitted). "Subjective factors involving the officer's motives, intent, or propensities are not relevant." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994). Factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Ray, 781 F.3d at 101; Smith v. Murphy, 634 F. App'x 914, 916 (4th Cir. 2015).

13

"Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." In re Rezulin Prods. Liability Litig., 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004). Courts routinely exclude expert opinions which purport to offer testimony concerning a party's intent or state of mind. *See*, Shammas, 2015 U.S. Dist. LEXIS 97879, at *9-10 (excluding expert opinions concerning an officer's motives, intent, or state of mind); Wells v. City of Chi., 2012 U.S. Dist. LEXIS 4749, at *28 (N.D.Ill. Jan. 2012) (noting that it had previously "barred expert testimony regarding a party's intent, in a situation in which the expert merely drawing inferences from the evidence, which the jury could draw equally well." (internal citation and quotations omitted)); Alanis v. City of Brownsville, 2019 U.S. Dist. LEXIS 230425, at *3 (S.D.Tex. 2019) ("An expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible." (*citing* Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992)); Scherrer v. City of Bella Villa, 2009 U.S. Dist. LEXIS 18129, at *9-10 (E.D.Mo. 2009) (stating expert testimony regarding what an officer was thinking is speculation and thus inadmissible).

Mr. Billy's speculation concerning the officers' states of mind form the backdrop for nearly every opinion he offers. Because such opinions are irrelevant, speculative, and will not assist the factfinder, Mr. Billy should be excluded.

**E. Mr. Billy's "Opinions" are Unreliable and are based upon the Wrong Standards**

In reaching his "opinions" Mr. Billy relies on two sources—model policies of the International Association of Chiefs of Police ("IACP") and the Roane County Sheriff's Department's policies and procedures manual.

14

The standards utilized by Mr. Billy are not the standards that govern the claims in this matter. Plaintiff has alleged Fourth Amendment claims for excessive force and bystander liability. ECF No. 54. As against the Roane County Commission, Plaintiff asserts a claim for municipal liability, as well as state-law claims of negligent retention and negligent supervision and training. Id.

Plaintiff's §1983 claims are governed by the Fourth Amendment and its reasonableness standard, not the IACP model policies[2] or the Sheriff's Department's policies and procedures manual.

As to the Sheriff's Department's policies and procedures, those are completely irrelevant to Plaintiff's claim. As succinctly stated by the Fourth Circuit, "[i]t is, in fact, settled law that a violation of departmental policy does not equate with constitutional unreasonableness." Abney v. Coe, 493 F.3d 412, 419 (4th Cir. 2007) (*citing* Davis v. Scherer, 468 U.S. 183, 193-96 (1984)). Moreover, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." Davis, 468 U.S. at 194; *see also*, Thompson v. City of Chicago, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]his court has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices. In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.") (internal quotation marks and citations omitted)); Edwards v. Baer, 863 F.2d 606, 608

---

[2] In a case in the Northern District, the Court noted that "West Virginia has neither adopted IACP protocols nor trains its police officers in IACP protocols." Witt v. W.Va. State Police, 2011 Dist. LEXIS 168381, at *2 (N.D.W.Va. 2011). Because of this the Court found that reliance on those protocols rendered testimony about them irrelevant and inadmissible. Id. at *3.

15

(8th Cir. 1988) ("police department guidelines do not create a constitutional right." (internal citations omitted); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995) ("Violation of a police departmental regulation is insufficient for liability under section 1983.").

As noted above, Plaintiff's §1983 claims are governed by the Fourth Amendment and its reasonableness standard. Despite this fact, Mr. Billy bases his opinions solely on the IACP model protocols and the Sheriff's Department's policies and procedures manual. Thus, Mr. Billy's opinions are irrelevant and should not be deemed admissible.

The same goes for the "opinions" provided by Mr. Billy in his December 2, 2020 Supplemental Letter. **Exhibit 4.** In his supplemental letter, Mr. Billy opines that the County Commission failed to conduct an internal investigation into incidents in Deputy King's past and takes particular aim at incidents in which the Sheriff's Department relied upon outside agencies to conduct the investigation.[3] Id. at p. 2. Yet, he does not cite to any authority that requires an agency to conduct an investigation when another agency is tasked with performing that function.

This failure is likely due to the fact that Courts have ratified the submission of an investigation to outside agencies. *See*, Cloes v. City of Mesquite, 582 F. App'x 721, 724 (9th Cir. 2014) (affirming summary judgment on claim deliberate indifference claim where municipality referred investigation to an outside agency because such a referral "does not rise to the level of 'deliberate indifference necessary to invoke *Monell* liability."); Dunn v. City of Newton, 2003 U.S. Dist. LEXIS 19315, at *27-28 (D. Kan.

---

[3] Mr. Billy wholly ignores Sheriff Cole's testimony that he either (1) investigated the complaints he was aware of and found them to be non-meritorious, ECF No. 63-1, at p. 43-48, 49-54, 57-60, 60-61, 66-69, 71-77; or (2) relied upon outside agencies to conduct the investigation for transparency purposes, Id. at p. 31, 33-34, 36-37, 38-39, 50, 87, 99-100.

16

2003) (granting summary judgment where municipality referred complaints to outside agencies, which found no wrongdoing on the officer's part); Doe v. Dendrinos, 1997 U.S. Dist. LEXIS 2052, at *19-20 (E.D.Pa. 1997) (granting summary judgment where supervisor turned over investigation against officer to independent agency); David v. City of Bellevue, 2016 U.S. Dist. LEXIS 73370, at *34-36 (N.D.Ohio 2016) (granting summary judgment to city where it requested independent investigation rather than conducting an internal investigation).

Nor does Mr. Billy even attempt to show that the complaints were meritorious or otherwise deserving of disciplinary action against Deputy King or that such incident were similar to the facts of this case. **Exhibit 4.** Rather, he simply offers his opinion as a finality without any supporting rationale. Id. "[A]n expert's ipse dixit is inadmissible." Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc., 521 F.3d 790, 791 (7th Cir. 2008). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." Mid-State Fertilizer Co. v. Exchange National Bank, 877 F.2d 1333, 1339 (7th Cir. 1989). Of course, by failing to provide any analysis of the prior incidents, Mr. Billy cannot—and does not—offer opinions about how such investigations would have turned out.

Mr. Billy's opinions rely upon the wrong standard, or in some instances no standards at all, and lack the foundation to be admissible and further are not helpful to the jury.

### IV.     CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Defendants respectfully request that this Court exclude Mr. Billy as an expert witness, and for any such other and further relief as this Court deems just and proper.

                                                **ROANE COUNTY COMMISSION, M.P. KING, N.S. STEPP, S.A. MCDONALD, Z.W. HARTLEY**

                                                By Counsel,

                                                ***/s/ Drannon L. Adkins***
                                                Wendy E. Greve, WV State Bar No. 6599
                                                Drannon L. Adkins, WV State Bar No. 11384

***PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC***
JamesMark Building
901 Quarrier Street
Charleston, WV  25301
Telephone:     (304) 344-0100
Facsimile:     (304) 342-1545

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON**

**BRAD E. PROCTOR,**

      **Plaintiff,**

v.                                          Civil Action No. 2:19-cv-00432
                                                Honorable Thomas E. Johnston

**ROANE COUNTY COMMISSION,
M.P. KING, N.S. STEPP, S.A. McDONALD,
Z.W. HARTLEY,**

      **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for Defendants, Roane County Commission, M.P. King, N.S. Stepp, S.A. McDonald, and Z.W. Hartley, by, do hereby certify on this **16th day of February 2021**, that a true copy of the foregoing *"***DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERT WITNESS, GERRY D. BILLY***"* has been filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the below listed CM/ECF participant:

                    Mark S. Plants, Esquire
                    Plants Law Offices
                    320 2nd Avenue
                    South Charleston, WV 25303

                    Kevin P. Davis, Esquire
                    PO Box 6067
                    Charleston, WV 25362

                                    */s/ Drannon L. Adkins*
                                    Wendy E. Greve, WV State Bar No. 6599
                                    Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301
Telephone: (304) 344-0100
Facsimile: (304) 342-1545
E-Mail: wgreve@pffwv.com; dadkins@pffwv.com