IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRAD E. PROCTOR,

        Plaintiff,

v.                                                     CIVIL ACTION NO. 2:19-cv-00432

M.P. KING, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant the Roane County Commission's ("Defendant") Motion for Summary Judgment. (ECF No. 63.) For the reasons discussed more fully below, the Court **DENIES** Defendant's motion.

## I.    BACKGROUND

This 42 U.S.C. § 1983 action arises out of an incident where Defendants M. P. King ("Deputy King"), N. S. Stepp ("Trooper Stepp"), S. A. McDonald ("Trooper McDonald"), and Z. W. Hartley ("Trooper Hartley") allegedly struck and injured Plaintiff Brad Proctor ("Plaintiff") without justification while executing an arrest warrant. Eight days prior to the incident that led to this lawsuit, Plaintiff and a passenger engaged in a high-speed chase with Deputy King. (Pl.'s Ex. 1 at 1.) During the course of the pursuit, Deputy King rear–ended Plaintiff's vehicle, and Plaintiff allegedly caused Deputy King to wreck his own vehicle into a ditch which caused a flat

tire. (ECF No. 63–2 at 10.) Trooper Stepp and Trooper Hartley as well as other officers then took over the chase, but Plaintiff was ultimately able to avoid capture. (*Id.*)

On January 18, 2018, Deputy King as well as Troopers Stepp, McDonald, and Hartley arrested Plaintiff on outstanding warrants at Plaintiff's residence located in Clay County, West Virginia. (ECF No. 1 at 1–2, ¶¶ 1, 10.) Plaintiff further alleges that, at that time, he "immediately laid face down on the floor, completely prone- [sic] with his hands spread out above his head" and that he "did not resist arrest, did not attempt to flee, and was completely compliant." (*Id.* at ¶¶ 11, 12.) Then, Plaintiff asserts Deputy King, Trooper Stepp, Trooper McDonald, and Trooper Hartley "beat, kicked, stomped, and punched" him while he laid on the floor. (*Id.* at ¶ 13.) After the beating, Plaintiff alleges he was handcuffed and thrown in the snow, where he laid "with his hands cuffed behind his back while shirtless for over an hour" while the officers searched his home. (*Id.* at ¶ 14; Pl.'s Ex. 2 at 34.) Plaintiff alleges he sustained injuries to his face, torso, the back of his head, and had a fractured rib. (Pl.'s Ex. 15.) Plaintiff further alleges he suffered a cut all the way through his tongue and had two of his teeth knocked out. (*Id.*)

On December 7, 2020, the Roane County Commission filed its Motion for Summary Judgment. (ECF No. 63.) Plaintiff timely responded, (ECF No. 66), and Roane County Commission timely replied, (ECF No. 68).

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty*

2

*Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

Plaintiff's Amended Complaint alleges the following five causes of action: Count I for excessive force in violation of the Fourth Amendment of the United States Constitution against

3

Deputy King, Trooper Stepp, Trooper McDonald, and Trooper Hartley; Count II for municipal liability against the Roane County Commission; Count III for bystander liability against Deputy King, Trooper Stepp, Trooper McDonald, and Trooper Hartley; Count IV for negligent retention against the Roane County Commission; and Count V for negligent supervision and training against the Roane County Commission. (*See* ECF No. 54.) In a Memorandum Opinion and Order entered on March 4, 2020, the Court dismissed without prejudice Plaintiff's Count II claim for municipal liability for failure to allege facts that would entitle him to relief. (ECF No. 25 at 7.) However, Plaintiff was permitted to reallege this claim in his Amended Complaint. (ECF Nos. 53, 54.) The Roane County Commission moves for summary judgment on Count II, Count IV, and Count V. (ECF No. 64.) Each argument is addressed in turn.[1]

### A. Count II for Municipal Liability Under 42 U.S.C. § 1983

Defendant argues that Plaintiff's claim for municipal liability fails as a matter of law because Plaintiff has failed to provide evidence of an unconstitutional government policy, custom, or practice that caused Plaintiff's injury. (ECF No. 64 at 10.) Liability of a municipality under § 1983 for the actions of its officers and employees cannot be premised on the doctrine of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a plaintiff seeking to establish liability by a local government defendant must show that the execution of a policy or custom of that municipality caused the violation. *Id.* at 694; *Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000). Thus, the Roane County Commission cannot be held liable for the alleged unconstitutional conduct of Deputy King[2] simply

---

[1] In reply, Defendant asks this Court to strike Plaintiff's expert witness reports because it argues that the expert's report contains legal conclusions couched as opinions. (ECF No. 68 at 11.) This Court did not consider Plaintiff's expert testimony in making any of its determinations and the expert's opinions were completely disregarded.

[2] Before this Court can consider this claim, it must first determine whether Plaintiff seeks to base his municipal liability

4

because Deputy King is an employee. Rather, liability on the part of the Roane County Commission for Deputy King's alleged unconstitutional conduct arises only if his alleged unconstitutional conduct represented or carried out official city policy or custom.

Official policy refers to prescribed courses of government action either directly created by lawmakers or through the municipal agency. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). The government's official policy is not the only basis on which municipal liability can be imposed. The exact language of § 1983 also includes customs or usage which can be found in "persistent and widespread . . . practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." *Id.* at 1386 (quoting *Monell*, 436 U.S. at 690–91). A "persistent and widespread" practice of a custom or usage

> by municipal agents and employees, may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees. Actual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body. Constructive knowledge may be evidenced by the fact that the practices have been so widespread

---

claim solely on the actions of Deputy King or all the defendant officers. Plaintiff's Amended Complaint fails to specify, and the parties do not discuss this issue. (*See* ECF No. 54 at 9, ¶¶ 40–44.) Defendant's briefing appears to assume that Deputy King's actions are the basis for this claim. Further, Plaintiff's response in opposition discusses Deputy King's actions almost exclusively and states in his conclusion that Sherriff Cole was deliberately indifferent only to Deputy King's conduct. (*See* ECF No. 66 at 20.) Plaintiff provides no evidence concerning Trooper Stepp's actions and cites only one incident involving Trooper McDonald and Trooper Hartley, respectively. Plaintiff also makes allegations regarding conduct by Deputy Hickman, who is not a defendant in this lawsuit.

This Court has held on multiple occasions that "a policy or custom will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Myers v. City of Charleston*, Civ. Action No. 2:19-cv-00757, 2020 WL 4195005 at *8 (S.D. W. Va. July 21, 2020); *see also Frye v. Lincoln Cty. Comm'n*, No. 2:20-CV-00403, 2021 WL 243864, at *7 (S.D. W. Va. Jan. 25, 2021). While Sheriff Cole does admit that he did not conduct his own investigation into the use of force by Deputy Hickman or Trooper Hartley as is similarly alleged with relation to Deputy King's actions, this singular incident is not sufficient to establish a pattern or practice of failing to adequately investigate, supervise, or correct these officers' actions. Further, with regard to Trooper McDonald, Plaintiff alleges only that he placed Roger Adams under arrest but makes no other accusations about the Commission's failures with relation to this incident. (ECF No. 66 at 14.) Accordingly, Plaintiff's Count II claim for municipal liability is **DISMISSED** to the extent this claim is based on the actions of any defendant other than Deputy King. Further, even if the Court considered Plaintiff's allegations regarding the Bernard Cottrell incident, the result would be the same.

> or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them.

*Id.* at 1387 (internal quotations omitted). Further, in the circumstances where the municipal policy is not unconstitutional in itself, fault can be found in deficient police training programs and supervision which lead to constitutional violations by untrained police officers or in the "irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example." *Id.* at 1389.

Further, "[b]ecause municipal liability results only when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom as above defined is (1) fairly attributable to the municipality as its 'own,' and is (2) the 'moving force' behind the particular constitutional violation." *Id.* at 1386–87 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). If an official policy is unconstitutional, no evidence is needed other than the statement of the policy. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985). However, in cases like this where the policy or custom is not unconstitutional by itself, the plaintiff must independently prove that the policy or custom itself caused the violation. *Spell*, 824 F.2d at 1387–88. "Proof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Id.* The Fourth Circuit notes that a plaintiff is most likely to slip into the "forbidden realm" of *respondeat superior* liability when he makes claims based on a policy of deliberate indifference or on an unconstitutional custom. *Id.* "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so,

rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.*

Here, Plaintiff does not challenge police training, but instead appears to seek to impose liability for the Roane County Commission's failure to maintain adequate internal checks on Deputy Kings' use of excessive force which has allowed it to become a pattern. Plaintiff details the county's written policies for both body cameras and use of force and also discusses Deputy King's training but does not argue that either specifically led to Deputy King's alleged unconstitutional conduct. Under the Roane County Sheriff's Department's body cam policy, officers are required to use their discretion as to when to activate their cameras. In addition, the policy states that officers should activate their cameras during "traffic stops, arrests, searches, interrogations, interviews, and pursuits" and requires officers to activate the camera "during the course of any encounter with the public that becomes adversarial after the initial contact." (Pl's Ex. 7 at 165.) Further, supervisors are required to ensure that officers utilize their cameras in accordance with these policies and are required to periodically review footage to ensure that cameras are operating properly and are being utilized. (*Id.* at 168.) It is undisputed that Deputy King does not wear a body camera and, instead, keeps it in his cruiser because he feels that it would interfere with his plain clothes drug work. (Pl's Ex. 3 at 6.) Sherriff Cole states that he does not believe anyone in the department ever held a meeting with Deputy King about his failure to wear a body camera. (ECF No. 63–1 at 31.) Plaintiff's allegations go beyond Deputy King's failure to wear a body camera. Plaintiff also details the Roane County Sherriff's Department's use of force policy which requires officers to document any application of force and requires the sheriff to review all reported uses of force. (Pl.'s Ex. 7 at 38.)

7

In addition, Plaintiff details twelve instances of excessive force and violent behavior perpetrated by Deputy King.[3] Defendant argues that these "few" instances are "sporadic", but Plaintiff alleges that all these incidents involve the same, recurrent failures by both Deputy King and the Roane County Commission. (ECF No. 68 at 2.) Specifically, Plaintiff alleges that Deputy King continuously fails to activate his body camera, fails to photograph or document injuries, and fails to create use of force reports. Further, Plaintiff alleges that Sheriff Cole and the Roane County Commission continuously fail to hold meetings with Deputy King, fail to include documents of incidents in Deputy King's personnel file, fail to conduct an adequate investigation or conduct an investigation at all into Deputy King's use of force, and fail to follow and enforce its own policies and procedures.

First, Plaintiff details an incident where Deputy King pulled over a school bus because a hat flew out the window and nearly struck his cruiser. Deputy King removed a minor from the bus and placed him in his patrol car and drove him to school. (Pl.'s Ex. 8 at 483.) The minor filed a complaint with the sheriff's office and alleged that Deputy King intimidated and scared him. (*Id.*) Next, Plaintiff alleges Deputy King ordered a woman to leave school property when she was picking up her daughter from a school dance. (*Id.* at 464–466.) She alleges that Deputy King got in her face, yelled at her, and placed his hand on his gun and ordered her to get in her car and leave. (*Id.*) Deputy King has provided no justification for his actions and was not asked to give

---

[3] Defendant argues this Court should strike Plaintiff's Exhibits 7, 8, 13, and 14 because these documents were produced pursuant to the Agreed Protective Order, (ECF No. 17), between the parties and Plaintiff allegedly failed to provide advance notice of his intent to use these documents in violation of that agreement. While Exhibit 8 is marked as confidential on each page, the three other exhibits contain no marks identifying these documents as confidential documents subject to this Order. Thus, the majority of the documents challenged do not appear to even be subject to this Order. In order to warrant such a drastic sanction, Defendants must provide more evidence to support its claim. Further, even if Defendant was able to show a violation occurred, the remedy is unclear and striking these documents would be the most severe sanction.

a statement. (ECF No. 63–2 at 3–4.) Sheriff Cole determined that both complaints were unfounded and found that Deputy King did not abuse his authority. (ECF No. 63–1 at 51, 60.)

Next, Plaintiff alleges two other instances involving Keith Davis and Jacob Dodd. Davis called 911 to report an excessive force incident involving Deputy King that occurred several years prior, but the operator misunderstood and thought Davis sought to report a crime to Deputy King. Davis alleges Deputy King then arrived at his residence, arrested him for misdemeanor charges, handcuffed him, and then beat him in the back of his cruiser while Davis' wife called 911 for help. (Pl.'s Ex. 8 at 341–342.) Next, Jacob Dodd alleges that Deputy King injured Dodd's forehead in the course of an arrest. (*Id.* at 370.) A use of force report was completed for both incidents, but Plaintiff alleges neither report was signed by Deputy King. Plaintiff further alleges that no photos of either individual's injuries were taken, no body cam or cruiser footage was produced, no statement was taken from Dodd, and there was no final determination as to the justification for the force applied. (ECF No. 66 at 10–12.)

Next, Plaintiff details five separate incidents involving Jay Gibson, Chris Harper, Roger Adams, Brad Proctor, and David Idleman. All of these incidents involve excessive force allegations against Deputy King. Gibson alleges that Deputy King pointed his gun at Gibson's forehead in the course of an arrest, and Deputy King did not fill out a use of force report. Sheriff Cole investigated the incident but failed to speak with Gibson himself or any witnesses. (ECF No. 63–1 at 70.) Next, Chis Harper alleged that he sustained a head injury caused by Deputy King inflicted at the police station. While a use of force report was filed, Deputy King did not sign it and there are no photographs or description of Harper's injuries. (ECF No. 66 at 14.) Roger Adams and his wife filed a complaint against Deputy King after he was arrested and thrown

9

to the ground after Adam's went out in his own driveway to investigate why Deputy King had parked his patrol car in his driveway. (ECF No. 7 at 532.) No use of force report was filed and no investigation was conducted. (ECF No. 66 at 15.) Both Proctor and Idleman allege that Deputy King used excessive force causing injury in the course of an arrest, but no documentation relating to either incident is included in Deputy King's personnel file. Again, Plaintiff alleges that Deputy King did not activate his body camera, did not fill out a use of force report at all, did not document or photograph injuries, and the Roane County Sheriff's Department failed to perform an investigation to make a determination of the appropriate amount of force.

Finally, Plaintiff details three instances of deadly force used by Deputy King. First, Deputy King was investigating a report of a stolen vehicle when he fired approximately five rounds at a fleeing vehicle driven by Sean Bland. (Pl.'s Ex. 7 at 430.) Bland fled into Kanawha County and the Kanawha County Sheriff's Department investigated and produced a report. (*Id.*) Plaintiff alleges that Roane County relied only on the Kanawha County Sheriff's Department's report and did not conduct its own investigation. Further, no use of force report was filed and Deputy King was not wearing his body camera. Plaintiff also alleges that shooting at a moving vehicle is in violation of Roane County's policies and Plaintiff alleges that Roane County did not investigate this violation.

Next, Deputy King shot and killed Timmy Rhodes with a shotgun at close range. Again, there is no documentation relating to his incident in Deputy King's personnel file, no photographs, medical records, statements, body camera footage, and no investigation was conducted. Further, Plaintiff alleges that Deputy King did not receive counseling, as is required by policy. (ECF No. 66 at 17.) Finally, on October 5, 2020, during the pendency of this lawsuit, Deputy King used

deadly force and shot and killed Michael Nichols. (*Id.* at 18.) After this shooting, Plaintiff alleges that Deputy King was placed on administrative leave for the first time in his career. (*Id.*)

When viewing the evidence in the light most favorable to Plaintiff, there is sufficient evidence to show that Deputy King has been allowed to use unregulated excessive force without oversight by his superiors. Importantly, Defendant does not refute any of this evidence and instead argues that this is not sufficient to establish a claim for municipal liability. While Plaintiff does make a host of differing allegations, it is the culmination of these failures as well as the similarities in these incidents that allows this Court to conclude that a jury could reasonably find for Plaintiffs. The twelve instances of force detailed by Plaintiff show that the Roane County Commission has demonstrated a persistent and widespread failure to adequately photograph alleged injuries, failure to follow its own policies relating to body cameras and use of force reports, failure to conduct through investigations of alleged injuries or excessive force, and a failure to hold a single meeting or reprimand Deputy King for the myriad of accusations of abuse and lawsuits filed against him. Similar to these other allegations of force, Plaintiff himself alleges he was beaten by Deputy King and the other defendant officers during the course of an arrest and that Deputy King failed to wear a body camera, failed to file a use of force report, and failed to photograph or document Plaintiff's injuries.

In addition, based upon his own testimony, Sherriff Cole is aware of Deputy King's failure to wear his body camera and the extensive allegations against him, but Sherriff Cole has never reprimanded Deputy King for his actions. Sherriff Cole was aware of the incidents detailed in Deputy King's personnel file and others that were not recorded there but saw no issue with any of his actions, even when Deputy King violated the department's own policies. Deputy King

states that no one in the department has never reprimanded Deputy King or even held a meeting with him over any of the allegations of force Plaintiff has detailed here. (ECF No. 63–2 at 6.) Thus, Plaintiff has also offered sufficient evidence to show that the Roane County Commission had actual knowledge of these customs and failed to stop or correct these practices such that their failures amounted to deliberate indifference.

Considering the evidence Plaintiff has produced which details significant and similar instances of violent behavior perpetrated by Deputy King and similar reactions by the Roane County Commission, a reasonable jury could find for Plaintiff. Plaintiff has produced evidence to show that Deputy King's actions in this case were "almost bound to happen, sooner or later." *Spell*, 824 F.2d at 1391. Thus, Plaintiff has produced sufficient evidence to show that there is a genuine issue for trial on his municipal liability claim. Accordingly, summary judgment is **DENIED** for Defendant on Plaintiff's Count II claim for municipal liability.

### B. Count IV for Negligent Retention

Next, Defendant argues that Plaintiff's negligent retention claim fails as a matter of law because Plaintiff has failed to produce evidence in support of his claim. (ECF No. 64 at 16.) West Virginia recognizes a cause of action for negligent hiring and retention. *See State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997). The West Virginia Supreme Court of Appeals applies the following test for a claim based on negligent hiring and retention under West Virginia law:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W. Va. 1998) (quoting *Taylor*, 499 S.E.2d at 289 n.7). The court must consider "the nature of the employee's job assignment, duties and responsibilities." *Id*. at 507. The duty with respect to hiring and retention increases "as the risks to third persons associated with a particular job increase." *Id.* An "employer's duty is heightened" when the prospective employee is a police officer, as police officers are permitted to carry guns, to use necessary force to effect arrest, and to enter civilian residences under certain circumstances. *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514 (S.D. W. Va. 2010).

Here, Plaintiff is challenging the Roane County Commission's retention of Deputy King after it became aware of Deputy King's continued use of force. As discussed above, Plaintiff has presented evidence of twelve instances of Deputy King issuing threats or using excessive force in both his interactions with the public and with arrestees or suspects. In addition, Plaintiff has produced evidence to show that Sherriff Cole and the Commission failed to take action to correct Deputy King's repeated uses of force.

There is sufficient evidence that both Sherriff Cole and the Commission have been put on notice of both Deputy King's propensity for using excessive force and of his failure to follow department protocol. Finally, Sheriff Cole and the Commission have failed to take any action to correct Deputy King's behavior, and Plaintiff himself suffered injury similar to the twelve other individuals identified by Plaintiff. Taken as a whole, Plaintiff has produced sufficient evidence to withstand summary judgment on this claim. Accordingly, summary judgment is **DENIED** for Defendant on Plaintiff's Count IV claim for negligent retention.

### C. Count V for Negligent Supervision and Training

To state a claim for negligent supervision or training under West Virginia law, a plaintiff must show that an employer "failed to properly supervise" an employee and, as a result, the employee "proximately caused injury to" the plaintiff. *Woods*, 712 F. Supp. 2d at 514 (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)). In *Taylor*, the West Virginia Supreme Court "treat[ed] negligent supervision like other claims based in negligence." *Woods*, 712 F. Supp. 2d at 515.

In viewing the facts in the light most favorable to Plaintiff, Plaintiff has presented a genuine issue of material fact as to whether the Roane County Commission properly supervised Deputy King and whether this lack of supervision ultimately led to Plaintiff's injury. Specifically, Plaintiff alleges that Deputy King continuously fails to activate his body camera, fails to photograph or document injuries, and fails to create use of force reports. Despite these numerous accusations of excessive force and failure to follow department policy, Sheriff Cole and the Roane County Commission have never held a meeting with Deputy King or reprimanded him over any of the allegations made against him. (ECF No. 63–2 at 6.) It is undisputed that Sheriff Cole was aware of Deputy King's propensities and Plaintiff has presented evidence to show that the Commission failed to take any action to correct Deputy King's behavior.

Defendant argues that each of the allegations of misconduct were adequately investigated and that there is no evidence that the Roane County Commission failed to take action against Deputy King. However, contrary to Defendant's statements, Deputy King himself states that he has never been reprimanded about a citizen complaint, has never been told that he should have handled a situation differently, or that he was offered additional training after any complaint.

(ECF No. 63–2 at 6.) Further, Plaintiff challenges the adequacy of the investigation regarding all twelve allegations and states that Deputy King failed to adequately document or photograph his use of force and that some instances were not even included in his personnel file. Thus, Plaintiff has successfully demonstrated that there is a genuine issue of material fact for trial. Accordingly, summary judgment is **DENIED** for Defendant on Plaintiff's Count V claim for negligent supervision and training.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment, (ECF No. 63). All claims remain.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 27, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE