IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRAD E. PROCTOR,

      Plaintiff,

v.               CIVIL ACTION NO.   2:19-cv-00432

M.P. KING, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

  Pending before the Court is Defendant Roane County Commission's ("RCC") Motion to Bifurcate Trial (ECF No. 92.)   For the reasons discussed more fully below, the Court **GRANTS** Defendant's Motion to Bifurcate.

*I.*  BACKGROUND

  This 42 U.S.C. § 1983 action arises out of an incident where Defendants M. P. King ("Deputy King"), N. S. Stepp ("Trooper Stepp"), S. A. McDonald ("Trooper McDonald"), and Z. W. Hartley ("Trooper Hartley") allegedly struck and injured Plaintiff Brad Proctor ("Plaintiff" or "Proctor") without justification while executing an arrest warrant.   Eight days prior to the incident that led to this lawsuit, Plaintiff and a passenger engaged in a high-speed chase with Deputy King. (Pl.'s Ex. 1 at 1.)   During the course of the pursuit, Deputy King rear-ended Plaintiff's vehicle, and Plaintiff allegedly caused Deputy King to wreck his own vehicle into a ditch which caused a flat tire.   (ECF No. 63–2 at 10.)   Trooper Stepp and Trooper Hartley as well as other officers then took over the chase, but Plaintiff was ultimately able to avoid capture.   (*Id.*)

On January 18, 2018, Deputy King as well as Troopers Stepp, McDonald, and Hartley arrested Plaintiff on outstanding warrants at Plaintiff's residence located in Clay County, West Virginia. (ECF No. 1 at 1–2, ¶¶ 1, 10.) Plaintiff further alleges that, at that time, he "immediately laid face down on the floor, completely prone- [sic] with his hands spread out above his head" and that he "did not resist arrest, did not attempt to flee, and was completely compliant." (*Id.* at ¶¶ 11, 12.) Then, Plaintiff asserts Deputy King, Trooper Stepp, Trooper McDonald, and Trooper Hartley "beat, kicked, stomped, and punched" him while he laid on the floor. (*Id.* at ¶ 13.) After the beating, Plaintiff alleges he was handcuffed and thrown in the snow, where he laid "with his hands cuffed behind his back while shirtless for over an hour" while the officers searched his home. (*Id.* at ¶ 14; Pl.'s Ex. 2 at 34.) Plaintiff alleges he sustained injuries to his face, torso, the back of his head, and had a fractured rib. (Pl.'s Ex. 15.) Plaintiff further alleges he suffered a cut all the way through his tongue and had two of his teeth knocked out. (*Id.*)

Plaintiff's Amended Complaint alleges the following five causes of action: Count I for excessive force in violation of the Fourth Amendment of the United States Constitution against Deputy King, Trooper Stepp, Trooper McDonald, and Trooper Hartley; Count II for municipal liability against the Roane County Commission; Count III for bystander liability against Deputy King, Trooper Stepp, Trooper McDonald, and Trooper Hartley; Count IV for negligent retention against the Roane County Commission; and Count V for negligent supervision and training against the Roane County Commission. (*See* ECF No. 54.) On September 1, 2021, Plaintiff, Trooper Hartley, Trooper McDonald, and Trooper Stepp filed a Stipulation of Dismissal With Prejudice. (ECF No. 121.) On September 2, 2021, the Court entered a Partial Dismissal Order dismissing

Plaintiff's claims against Troopers Hartley, McDonald, and Stepp with prejudice. (ECF No. 123.) Accordingly, RCC and Deputy King are the only remaining Defendants in this action.

On May 7, 2021, RCC filed its Motion to Bifurcate Trial. (ECF No. 91.) Several motions in limine were pending at the time RCC filed this motion. (*See* ECF Nos. 72, 73, 74, 75, 76.) The Court's resolution of Defendant RCC and Deputy King's Motion in Limine to Exclude Any and All Evidence, Testimony or Reference to Prior Lawsuits, or Citizen Complaints (the "Motion in Limine"), (ECF No. 74), is particularly relevant for purposes of resolving RCC's Motion to Bifurcate because RCC contends that Plaintiff will seek to introduce evidence of allegedly unconstitutional conduct in an effort to show that the conduct currently at issue conforms to RCC's practices or customs. (ECF No. 92 at 7.) RCC contends this evidence could include documents and evidence from Deputy King's personnel file regarding incidents which Plaintiff believes shows that RCC failed to properly supervise and discipline Deputy King. (*Id.* at 8.) RCC avows that such evidence would be inadmissible against Deputy King and would be unfairly prejudicial to him should the Court refrain from bifurcating the trial. (*Id.*)

The Court held three telephonic hearings on August 30, 2021, September 3, 2021, and September 9, 2021, during which the parties argued their positions regarding the Motion in Limine. (ECF Nos. 134, 137.) Following the August 30, 2021 telephonic hearing, Plaintiff filed a Supplemental Response in Opposition to the Motion in Limine, which set forth all character evidence he seeks to admit at trial under Federal Rule of Evidence 404(b) and articulated the purposes for which such evidence will be offered. (ECF No. 115 at 1.)

Plaintiff set forth evidence of three incidents he sought to introduce against Deputy King under Rule 404(b): (1) Plaintiff sought to introduce evidence that Deputy King did not wear his

3

body camera during his encounter with Plaintiff, (*Id.* at 2–3); (2) Plaintiff sought to introduce evidence that Deputy King failed to draft a use of force report regarding his incident with Plaintiff, (*Id.* at 3); and (3) Plaintiff sought to introduce an incident where Deputy King intentionally and maliciously slammed his brakes while two individuals were under arrest in the back of his police cruiser, (*Id.* at 3–4).

Conversely, Plaintiff set forth evidence of several incidents he sought to introduce against RCC under Rule 404(b): (1) evidence of a 2013 incident where Deputy King allegedly verbally abused and unconstitutionally detained a minor by removing him from a school bus without probable cause, (*Id.* at 5); (2) evidence of a 2014 incident where Deputy King allegedly verbally abused an individual at a middle school dance while off duty, (*Id.*); (3) evidence of a 2016 incident involving another Roane County deputy where the deputy allegedly fired seven rounds into a suspect's vehicle, causing the death of the suspect, (*Id.* at 6); (4) evidence of a 2016 incident involving Deputy King where he allegedly used excessive force while unlawfully arresting another individual, (*Id.* at 6–7); (5) evidence of a 2017 incident involving Deputy King where he allegedly caused injury to another individual's head while neglecting to wear his body camera, (*Id.* at 7); (6) evidence of an incident involving Deputy King where he allegedly pointed his firearm at an individual's forehead during an arrest, causing an injury to the individual's head, (*Id.* at 7–9); (7) evidence of a 2017 incident involving Deputy King where he allegedly employed a leg sweep against an individual, causing the individual to sustain a head injury, (*Id.* at 9); (8) a 2017 incident involving Deputy King where he allegedly used excessive force to detain an individual, (*Id.* at 10–11); (9) evidence of the incident involving Plaintiff that is the subject of this action, (*Id.* at 11); (10) evidence of a 2018 lawsuit filed against Deputy King arising from an arrest that took place

4

after the incident between Deputy King and Plaintiff, during which Deputy King allegedly used excessive force, (*Id.* at 11–12); (11) evidence of a 2018 shooting involving Deputy King that occurred after Plaintiff's incident, during which Deputy King allegedly fired five rounds at a fleeing vehicle, (*Id.* at 12–13); (12) evidence of a lawsuit arising out of an 2019 deadly shooting involving Deputy King that occurred after Plaintiff's incident, (*Id.* at 13–14); and (13) evidence of a 2020 deadly shooting involving Deputy King, (*Id.* at 14).

Plaintiff did not offer evidence of these incidents to be introduced at trial against Deputy King. Rather, Plaintiff offered evidence of these incidents to be introduced against RCC for purposes of his Counts II, IV, and V claims against RCC. (*Id.* at 4.) On September 9, 2021, the Court entered an order granting in part and denying in part the Motion in Limine. (ECF No. 138.) Although the Court ruled that some of the evidence of the incidents offered by Plaintiff—discussed *supra*—was admissible *against RCC*, Plaintiff never raised, and the Court never ruled upon, the admissibility of that evidence *against Deputy King*.

Plaintiff timely responded to RCC's Motion to Bifurcate Trial, (ECF No. 93), and Defendant timely replied, (ECF No. 94). Accordingly, the pending motion has been fully briefed, and is now ripe for adjudication.

## II. LEGAL STANDARD

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Further, "the granting of separate trials is within the sound discretion of the trial judge." *Bowie v. Sorrell*, 209 F.2d 49, 51

after the incident between Deputy King and Plaintiff, during which Deputy King allegedly used excessive force, (*Id.* at 11–12); (11) evidence of a 2018 shooting involving Deputy King that occurred after Plaintiff's incident, during which Deputy King allegedly fired five rounds at a fleeing vehicle, (*Id.* at 12–13); (12) evidence of a lawsuit arising out of an 2019 deadly shooting involving Deputy King that occurred after Plaintiff's incident, (*Id.* at 13–14); and (13) evidence of a 2020 deadly shooting involving Deputy King, (*Id.* at 14).

Plaintiff did not offer evidence of these incidents to be introduced at trial against Deputy King. Rather, Plaintiff offered evidence of these incidents to be introduced against RCC for purposes of his Counts II, IV, and V claims against RCC. (*Id.* at 4.) On September 9, 2021, the Court entered an order granting in part and denying in part the Motion in Limine. (ECF No. 138.) Although the Court ruled that some of the evidence of the incidents offered by Plaintiff—discussed *supra*—was admissible *against RCC*, Plaintiff never raised, and the Court never ruled upon, the admissibility of that evidence *against Deputy King*.

Plaintiff timely responded to RCC's Motion to Bifurcate Trial, (ECF No. 93), and Defendant timely replied, (ECF No. 94). Accordingly, the pending motion has been fully briefed, and is now ripe for adjudication.

## II. LEGAL STANDARD

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Further, "the granting of separate trials is within the sound discretion of the trial judge." *Bowie v. Sorrell*, 209 F.2d 49, 51

(4th Cir. 1953). "Separating issues for trial, however, 'is not to be routinely ordered.'" *Toler v. Gov't Emps. Ins. Co.*, 309 F.R.D. 223, 225 (S.D. W. Va. 2015) (quoting Fed. R. Civ. P. 42(b) advisory committee's note). In addition, "the party seeking bifurcation has the burden of showing that separate trials are proper in light of the general principle that a single trial tends to lessen the delay, expense, and inconvenience." *Welch v. Logan Gen. Hosp., LLC*, No. 2:15-CV-01022, 2015 WL 3797148, at *1 (S.D. W. Va. June 18, 2015) (quoting *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010)).

### III. DISCUSSION

RCC argues the Court should bifurcate Plaintiff's claims against Deputy King from his claims against RCC for two reasons. First, RCC contends that bifurcation of the claims "furthers judicial expediency and economy" because the resolution of Plaintiff's claims against Deputy King could preclude any finding of municipal liability on the part of RCC. (ECF No. 92 at 4–7.) Second, RCC avers that bifurcation of the claims "is necessary to ensure that [Deputy King] . . . receive[s] a fair trial" because Plaintiff is expected to use evidence that will be highly prejudicial to Deputy King to prove his municipal liability claims against RCC. (*Id.* at 7–10.)

Plaintiff, on the other hand, argues that bifurcating his claims will result in undue delay, expense, and inconvenience. (ECF No. 93 at 2.) Moreover, Plaintiff contends that Deputy King's past acts—which he claims will be used to support his municipal liability claims against RCC—are also admissible against Deputy King.[1] (*Id.* at 2–3.) Finally, Plaintiff argues that, if

---

[1] It is puzzling to the Court that when given the opportunity to argue the admissibility of Deputy King's prior and subsequent bad acts *against Deputy King*, Plaintiff chose only to assert the admissibility of those acts *against RCC*. Plaintiff was given every opportunity to seek the admissibility of Deputy King's prior and subsequent bad acts against Deputy King, but he declined at every juncture. The parties were directed to submit briefing on Defendant's Motion in Limine with respect to Deputy King's prior or subsequent bad acts that Plaintiff sought to introduce at trial, and the purposes for which those incidents were to be offered. Plaintiff's Supplemental Response, (ECF No. 115), did not offer any prior or subsequent bad acts against Deputy King, but sought only to introduce those incidents against RCC.

6

bifurcated, the Court should bifurcate Plaintiff's municipal counts into a second phase, not an entirely new trial. (*Id.* at 3.) RCC does not object to the possibility of a "phased, unitary trial, if it is structured in such a way to ensure that only evidence relevant to [Plaintiff's] excessive force claim is presented to the jury during the first phase." (ECF No. 94 at 7–8.)

As to RCC's first contention, that bifurcation "furthers judicial expediency and economy," the Court agrees. RCC argues that the disposition of Plaintiff's claims against Deputy King could "eliminate the need" for a trial on Plaintiff's municipal claims against RCC. (ECF No. 92 at 7.) A municipality may be liable under Section 1983 if the municipality itself subjects an individual to a deprivation of rights or causes an individual to be subjected to such deprivation, "pursuant to official municipal policy." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). However, a municipality cannot be held liable for money damages based on the actions of one of its officers when the officer inflicted no constitutional harm. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *see also Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability.").

RCC argues that, because "there cannot be municipal liability against [RCC] if there is not a finding that Deputy King violated Plaintiff's constitutional rights, the interests of judicial economy" dictate that Plaintiff's claims against Deputy King be tried first and the claims against RCC second. (ECF No. 92 at 6.) RCC contends that the second trial against it "will only be necessary if the jury in the first trial determines that Deputy King violated Plaintiff's constitutional

rights." (*Id.*) Plaintiff, however, summarily alleges that "[b]ifurcation of the municipal claim will undisputedly cause unnecessary delay, additional expense, and 'piece meal' litigation of the individual counts." (ECF No. 93 at 2.)

However, as RCC pertinently notes, Plaintiff does not rebut its contention that judicial economy is best served by trying Plaintiff's claims against Deputy King first, and only conducting a second trial on Plaintiff's municipal claims against RCC if there is a finding against Deputy King. (ECF No. 94 at 3.) While this District has not considered the issue, the District of Maryland, as well as Second and Sixth Circuit Courts of Appeals, have found it desirable to bifurcate Section 1983 *Monell* liability claims from Section 1983 individual-capacity excessive force claims. *See Dawson v. Prince George's Cnty.*, 896 F. Supp. 537, 539–40 (D. Md. 1995); *Beasley v. Kelly*, No.: DKC 10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010); *see also Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999) ("Section 1983 actions are particularly well suited for bifurcation because the evidence needed to show a 'policy or custom' on behalf of the municipal entity is often unnecessary in the suit against the individual official."); *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (holding that a magistrate judge's decision to bifurcate a Section 1983 *Monell* claim from an individual liability claim was "eminently reasonable in the interests of judicial economy and avoiding possible juror confusion").

The Court agrees that, in the context of this case as it is currently framed for trial, bifurcation of Plaintiff's claims against Deputy King from his municipal liability claims against RCC would promote the interests of judicial economy and expediency. As RCC notes, the resolution of Plaintiff's claims against Deputy King may altogether eliminate the need to try Plaintiff's municipal liability claims. Moreover, the evidence required to try Plaintiff's municipal

liability claims will far exceed the evidence required to try his excessive force and bystander liability claims—as evidenced by the contrast in the volume of evidence submitted by Plaintiff with respect to his municipal claims, compared to the evidence submitted with respect to his claims against Deputy King, during the Court's resolution of Defendants' Motion in Limine. (*See* ECF No. 115.) Should the jury initially find that Plaintiff suffered no constitutional injury by Deputy King's actions, the introduction of the vast amount of evidence for Plaintiff's municipal liability claims will be unnecessary. Thus, bifurcating Plaintiff's excessive force and bystander liability claims against Deputy King from his municipal claims against RCC would undoubtedly further judicial expediency and economy.

RCC next contends that bifurcation of the claims "is necessary to ensure that [Deputy King] . . . receive[s] a fair trial" because Plaintiff is expected to use evidence that will be highly prejudicial to Deputy King to prove his municipal liability claims against RCC. (ECF No. 92 at 7–10.) RCC notes that "evidence related to policy, practice, and custom would be admitted on [Plaintiff's] municipal claims that would simultaneously need to be disregarded by the jury as to the individual claims." (*Id.* at 7.) Specifically, RCC anticipates that Plaintiff will introduce "documents and evidence from Deputy King's personnel file regarding incidents which he believes shows that [RCC] failed to properly supervise and discipline Deputy King." (*Id.* at 8.) RCC argues that the introduction of such evidence would be highly prejudicial to Deputy King and that "[b]ifurcation is proper to avoid the inherent prejudice and confusion that will result among the members of the jury." (*Id.*)

Plaintiff contends, however, that much of the evidence he will rely on to prove his municipal claims against RCC will also be relevant and admissible for his claims against Deputy

King.  (ECF No. 93 at 2–3.)  Specifically, Plaintiff argues that evidence of Deputy King's prior bad acts, which will be used to establish municipal liability, are also admissible for purposes of his excessive force claim against Deputy King.  (*Id.*)  However, as discussed in great detail above, Plaintiff was given the opportunity to raise the admissibility of Deputy King's prior and subsequent bad acts against Deputy King to prove his excessive force claim during the Court's disposition of RCC's Motion in Limine.  Despite being given this opportunity, Plaintiff chose only to raise the admissibility of Deputy King's prior and subsequent acts against RCC for purposes of his municipal liability claims.  (*See* ECF No. 115.)

Therefore, because Plaintiff declined to raise the admissibility of evidence relating to Deputy King's prior and subsequent bad acts *against Deputy King*, but chose only to raise the admissibility of such evidence *against RCC*, the Court finds it appropriate to bifurcate Plaintiff's claims against Deputy King from his claims against RCC.  Plaintiff's introduction of such evidence only against RCC, while simultaneously trying his claims against Deputy King, would lead to confusion among members of the jury with respect to evidence they are permitted to consider when considering Plaintiff's claims against Deputy King.

Accordingly, because bifurcation of Plaintiff's claims against Deputy King from his claims against RCC would promote the interests of judicial economy and expediency and eliminate confusion among members of the jury, the Court **GRANTS** RCC's Motion to Bifurcate Trial, (ECF No. 91.)

Finally, Plaintiff proposes that the Court bifurcate his municipal counts into a second phase of a unitary trial against Defendants, not into an entirely new trial.  (ECF No. 93 at 3.)  RCC notes that it "has no qualms with a phased, unitary trial, if it is structured in such a way to ensure

that only evidence relevant to [Plaintiff's] excessive force claim is presented to the jury during the first phase." (ECF No. 94 at 7.) Insofar as the parties are agreeable to a unitary, phased trial of Plaintiff's claims, the Court will bifurcate Plaintiff's excessive force and bystander liability claims against Deputy King from his municipal liability claims against RCC into two phases: the first phase consisting of the trial of Plaintiff's excessive force and bystander liability claims against Deputy King; and the second phase, if necessary, consisting of the trial of Plaintiff's municipal liability claims against RCC.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant RCC's Motion to Bifurcate Trial, (ECF No. 91). The trial of the above-captioned action is bifurcated into a unitary, phased trial consisting of the following two phases: (1) the trial of Plaintiff's Count I Section 1983 Excessive Force and Count III Bystander Liability claims against Deputy King; and (2) the trial of Plaintiff's Count II Municipal Liability, Count IV Negligent Retention, and Count V Negligent Supervision claims against RCC.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    November 9, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE